UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:17-CR-70-TLS |
| | ) | |
| JOHNATHAN LADIG | ) | |

**OPINION AND ORDER**

The Defendant, Johnathan Ladig, pled guilty to selling a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d), and knowingly transporting and shipping a stolen firearm, in violation of 18 U.S.C. § 922(i). The probation officer drafted a Presentence Investigation Report (PSR) [ECF No. 48] in preparation for sentencing. Ladig objected to the PSR on the basis that the four-level enhancement for trafficking in firearms pursuant to U.S.S.G. § 2K2.1(b)(5) is inappropriate because Ladig did not know that he was selling stolen firearms to a felon convicted for a controlled substance offense or a crime of violence. (*See* Def.'s Objection to PSR, ECF No. 41). This Opinion and Order resolves the Defendant's objection to the PSR.

**BACKGROUND**

On November 30, 2017, a confidential informant (CI) contacted ATF Special Agent Sean Skender regarding the Defendant, Johnathan Ladig. Earlier, Ladig had informed the CI that he had numerous firearms for sale. (PSR ¶ 9.) Ladig had obtained the firearms from a home he burglarized in Hillsdale County, Michigan. (*Id.* ¶ 10.) In a subsequent telephone conversation between Ladig and the CI, Ladig expressed his interest in selling the stolen firearms to the CI. (*Id.* ¶ 9.) The CI informed Ladig that he could not purchase the firearms but that an individual

named Sean, who was Agent Skender in his undercover capacity, would be interested in purchasing the firearms. (PSR ¶ 9.)

On December 1, 2017, Agent Skender acting in his undercover capacity called Ladig to discuss the stolen firearms. (*Id.* ¶ 11.) During the telephone conversation, Ladig informed Agent Skender that he had fifteen to twenty stolen firearms for sale. (*Id.*) Agent Skender informed Ladig that the CI was not interested in purchasing the firearms because of the number of firearms involved and because the CI was a felon. (*Id.*) Instead, Agent Skender told Ladig that he knew of another person from Chicago, Illinois, who, despite also being a felon, would be interested in the firearms. Agent Skender also added that this person will "want ammunition because he is a felon." (*Id.*) The person Agent Skender referenced was in fact another confidential informant (CI-2), also a felon. (*Id.*)

Agent Skender and Ladig exchanged several text messages and phone calls to discuss the details and logistics around a possible transaction for the stolen firearms. (*Id.* ¶¶ 12–13.) For example, on December 1, 2017, Ladig told Agent Skender that he would wipe the fingerprints from the stolen firearms before the transaction. On December 2, 2017, Ladig informed Agent Skender, in a text message, that a website revealed that the firearms were worth between $13,000 and $22,000. (*Id.* ¶ 13.) Ladig had told Agent Skender that he wanted $4,000 for the firearms. (*Id.* ¶ 11.)

Later that day, on December 2, Ladig met with ATF Special Agent Wayne Lessner, acting in his undercover capacity, and CI-2 at a truck stop in Waterloo, Indiana. (*Id.* ¶ 14.) CI-2 asked Ladig whether there were any homicides connected with the firearms. (*Id.*) CI-2 also informed Ladig that he was a felon and had been to prison. (*Id.*) CI-2 and Ladig subsequently exited the vehicle to inspect the firearms during which time CI-2 again stated multiple times that

he was a felon. (*Id.*) Next, the firearms were transferred from Ladig's vehicle to an undercover vehicle, and CI-2 paid Ladig $4,000 in exchange for the firearms. (*Id.*) Immediately thereafter, law enforcement apprehended Ladig. (*Id.*)

## LEGAL STANDARD

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson*, and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence). This Opinion and Order is intended to resolve the issues related to the first step, calculation of the Guidelines range.

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted). *See also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to draw

conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *England*, 555 F.3d at 622). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id*. However, it is the Government's burden to prove by a preponderance of the evidence that an enhancement applies. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006); *United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir. 1992).

## ANALYSIS

The United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(5) states that if the defendant engaged in the trafficking of firearms, then a four-level enhancement applies. Comment 13 to U.S.S.G. § 2K2.1 states that the four-level enhancement applies when the defendant "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—(I) whose possession or receipt of the firearms would be unlawful; or (II) who intended to use or dispose of the firearms unlawfully." U.S.S.G. § 2K2.1(b)(5), cmt. 13(A)(ii).

Comment 13 also explains when an individual's possession or receipt of a firearm would be unlawful. The commentary states:

> "'Individual whose possession or receipt of the firearm would be unlawful' means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 2K2.1(b)(5), cmt. 13(B).

4

In this case, the justification for the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) is based on the PSR's finding that:

> "[Ladig] committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to prohibited persons and/or *an individual who intended to use or dispose of the firearm unlawfully*, one of whom he admitted he knew to be an active methamphetamine dealer."

(PSR ¶ 18 (emphasis added).)

The Defendant objects that the enhancement is not applicable because although the defendant knew or may have known CI-2 was a felon, he would not have known if the felony in question was for a controlled substance offense or a crime of violence, as allegedly required by comment 13(B) to U.S.S.G. § 2K2.1(b)(5). (Def.'s Objection at 3.)

The Defendant does not acknowledge, however, that § 2K2.1(b)(5) applies not only when a defendant knows or should have known that the recipient of the firearms was convicted for a crime of violence or controlled substance felony but also when the defendant knows or should have known the recipient intended to use or dispose of the firearms unlawfully. Therefore, if Ladig "had reason to believe that the guns would be used for felonious activities," then § 2K2.1(b)(5) is applicable. *See United States v. Ingeles*, 282 F.3d 528, 539 (7th Cir. 2002) (internal quotations omitted).

A district court may examine the context surrounding an illicit firearms transaction to determine whether the defendant believed or had reason to believe the recipient would use the firearms unlawfully. In *United States v. Wagner*, the Seventh Circuit affirmed the district court's decision that the defendant did have reason to believe the recipient of the firearms would use them unlawfully for the purposes of U.S.S.G. § 2K2.1(b)(5). 467 F.3d 1085 (7th Cir. 2006). The Seventh Circuit held that the district court was correct in finding that U.S.S.G. § 2K2.1(b)(5)

5

applied because conversations between the CI and the defendant "indicates that [the defendant] did have reason to believe that the serial numbers were being removed and that the firearms were being resold by the CI to drug dealers." *Id.*, at 1090.

The Court finds that Ladig had reason to believe that CI-2 would use the firearms for an unlawful purpose. At the outset, in preparation for the transaction, Agent Skender informed Ladig that CI-2 was a felon and was going to want ammunition in addition to the fifteen to twenty firearms—indicating that CI-2 or individuals CI-2 was going to sell to were planning on using the firearms unlawfully. Furthermore, Ladig knew CI-2 was from Chicago, Illinois; Ladig informed Agent Skender that he would wipe the fingerprints off the firearms; and CI-2 asked whether any homicides were tied to the firearms. These facts taken together evidence that Ladig believed or had reason to believe that CI-2 was purchasing the stolen firearms to resell across state lines in Chicago, Illinois, to individuals intending to use the firearms for some unlawful purpose—specifically, CI-2 would be in violation of 18 U.S.C. §§ 922(a)(3) and (5), 922(d), 922(i), and 922(j). Indeed, the reason why Ladig would tell Agent Skender that the firearms were worth between $13,000 and $22,000 while only asking for $4,000 for himself would be so that Agent Skender and CI-2 would appreciate the profits to be gained by reselling the firearms.

Consequently, Ladig qualifies for a four-level enhancement pursuant to § 2K2.1(b)(5) because he knew or had reason to know that CI-2, the recipient of the stolen firearms, would use those firearms for some unlawful purpose—namely, transporting them to another state for resale. Therefore, the Court overrules the Defendant's objection to the trafficking enhancement.

## CONCLUSION

For the reasons stated above, the Defendant's Objection to the PSR is OVERRULED, as stated in this Order. At the time of sentencing, the Court will address the Defendant's request for a variance [ECF No. 43], in which the Defendant requests a variance in consideration of the 18 U.S.C. § 3553(a) sentencing factors.

SO ORDERED on January 16, 2019.

                                             s/ Theresa L. Springmann
                                            CHIEF JUDGE THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT