UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:17-CR-70-HAB |
| ) | |
| JOHNATHAN LADIG ) | |

## OPINION AND ORDER

Johnathan Ladig ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 68).[1] The Government filed its response to his Motion on November 19, 2020. (ECF No. 73).[2] The time for the Defendant to file a reply has passed and the motion is ripe for consideration. For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On December 19, 2017, the Defendant was charged in a two count Indictment with knowingly selling a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d) (Count 1) and knowingly transporting a stolen firearm, in violation of 18 U.S.C. §922(i) (Count 2). The facts underlying these charges were previously detailed by this Court in *United States v. Ladig*, No. 1:17-CR-70-TLS, 2019 WL 211423, at *1 (N.D. Ind. Jan. 16, 2019), and need not be fully recounted here. It suffices to say that on November 30, 2017, a confidential informant (CI)

---

[1] To the extent the Defendant was seeking a reduction pursuant to the First Step Act ("FSA") and pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to his motion. (ECF No. 70). Subsequently, the FCD filed a Notice indicating that it would not be appearing on the Defendant's behalf. (ECF No. 72).

[2] The Government also filed a Supplemental Response notifying the Court of a change in controlling authority, citing to *United States v. Gunn,* 980 F.3d 1178 (7th Cir. 2020). (ECF No. 74).

contacted a special agent with the ATF regarding the Defendant. The CI informed the agent that the Defendant had numerous stolen firearms for sale. (Presentence Investigation Report (PSR), ECF No. 48 at ¶ 9–10). Shortly after involving the agent, the CI told the Defendant that he could not purchase the firearms but that an individual named Sean (the agent working in an undercover capacity) would be interested in purchasing the firearms. (*Id.*)

On December 1, 2017, the agent called the Defendant to discuss the stolen firearms. (PSR at ¶ 11.) During the telephone conversation, the Defendant informed the agent that he had fifteen to twenty stolen firearms for sale. (*Id.*). The agent then set up a transaction wherein the Defendant would sell firearms to a third individual, also acting undercover (CI-2). In conversations leading up to the transaction, the Defendant was informed that CI-2 was a convicted felon. On December 2, 2017, the Defendant met with the agent and CI-2 at a truck stop in Waterloo, Indiana. (*Id.* ¶ 14.) The firearms were transferred from the Defendant's vehicle to an undercover vehicle, and the Defendant was paid $4,000 in exchange for the 15 firearms. (*Id.*). Immediately thereafter, law enforcement apprehended the Defendant. (*Id.*). In a post-arrest interview, the Defendant admitted his involvement in a burglary during which the guns were stolen, admitted selling the firearms to CI-2, and admitted knowing CI-2 was a felon.

The Defendant pled guilty to both charges and received a 93-month sentence followed by one year of supervised release. (ECF Nos. 33, 65). The Defendant is currently housed at FMC Lexington in Lexington, Kentucky, with an anticipated release date in September 2024.

## **DISCUSSION**

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate

compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, as amended by § 603(b) the First Step Act, a court may not modify a term of imprisonment except that –

>  (1) in any case --
>
>  (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
>  (i) extraordinary and compelling reasons warrant such a reduction …
>
>  … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The Government concedes that the Defendant has exhausted his administrative remedies and that his motion is properly before the Court. Thus, the Court turns to the substance of the Defendant's request, his contention that he has demonstrated "extraordinary and compelling reasons" for his release.

The Defendant asserts that the COVID-19 pandemic combined with his medical condition of scoliosis constitute extraordinary and compelling circumstances justifying his release. (ECF No. 68). Additionally, he states that his four sons live with his brother and his wife. However, his brother's wife passed away in early 2019, and the Defendant states that her death has devastated his children. The Defendant would like to be released to be able to parent his sons. The Defendant also notes that his mother suffers from several medical conditions and needs his assistance.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that

"describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly before the court. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Accordingly, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes.[3] Second, the Court determines whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. 1B1.13.

---

[3]However, as *Gunn* made clear, the policy statement's requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to be consistent with "applicable policy statements." And, the Sentencing Commission has not yet issued a policy statement "applicable" to the Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *5–7 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5.

In this case, the Defendant's filing gives this Court very few reasons, let alone extraordinary or compelling ones, to justify granting his motion. The Defendant asserts he has scoliosis, a diagnosis that is confirmed in his PSR (PSR at ¶ 72), but he has not supplied any further medical documentation regarding that condition, how the BOP is treating this condition or any other type of evidence to substantiate his contention that this condition would justify the relief sought. Scoliosis is not one of the conditions recognized by the CDC as a comorbidity increasing the chances of serious illness from COVID-19 nor is there any indication in his Motion that this condition "substantially diminishes" his ability to provide self-care within the correctional facility. *See* U.S.S.G. § 1B1.13 cmt. n.1.

Defendant has identified some family circumstances that he hopes would warrant his release, including concerns about taking care of his children and assisting his mother. While the Court is sympathetic to the Defendant's concerns about the welfare of his sons and mother, "family circumstances that would amount to an extraordinary and compelling reason [for compassionate release] are strictly circumscribed under the [applicable United States Sentencing Commission] policy statement…" *United States v. Goldberg*, No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. April 13, 2020); *see also* U.S.S.G. § 1B1.13 cmt. n.1(C) (limiting family circumstances that may be considered an adequate reason for a sentence reduction to the need to care for the defendant's minor children or a spouse or registered partner, when no other caregiver is available). Here, the Defendant acknowledges that his brother has been the primary caregiver to his sons while the Defendant has been incarcerated. Thus, he has not demonstrated the absence of a caregiver for his sons.[4]

Nor do his concerns for his mother's general health and well-being suffice as an "extraordinary and compelling" reason under 18 U.S.C. § 3582(c)(1)(A), *see, e.g.*, *United States v. Whigum*, No. 1:12-CR-87-HAB, 2020 WL 6802905, at *1 (N.D. Ind. Nov. 18, 2020) (mother's rare brain condition and grandmother's dementia insufficient to establish extraordinary and compelling circumstances); *United States v. Stewart*, No. 1:16-CR-89-HAB, 2020 WL 5406181, at *3 (N.D. Ind. Sept. 9, 2020) (concerns about ailing grandmother contracting COVID-19 not sufficient); *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (denying defendant's compassionate release motion to care for his widowed mother's deteriorating health); *Goldberg*, 2020 WL 1853298, at *4 (denying compassionate

---

[4] The Defendant's sons were not living with him at the time he committed the underlying federal offense. The children had been removed from his custody and placed with his brother in May 2017 after allegations of domestic violence and drug use in the home surfaced. (PSR at ¶69–70).

release motion and stating that "a desire to care for one's elderly parents does not qualify as an 'extraordinary and compelling' reason for release" under 18 U.S.C. § 3582(c)(1)(A)); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (denying compassionate release motion to care for defendant's ill mother because "[m]any, if not all inmates, [have] aging and sick parents"). Accordingly, this factor does not aid the Defendant's cause.

Finally, the Defendant has expressed concern about the ability of the BOP to contain the COVID-19 virus, a concern that is borne out by increased death and positivity rates at his facility since the filing of his Motion. At the time he filed his motion the Defendant indicated that there were 7 reported deaths at FMC Lexington.

As of the date of this Opinion and Order, the entire country has experienced a surge in COVID-19 cases. The United States recently exceeded 20 million confirmed positive cases and 350,000 deaths attributed to the virus. Given that this pandemic is raging among the general population, it is not surprising that the BOP has not been spared. Lexington FMC, a facility housing 1,116 inmates, is currently reporting 389 positive inmate cases, 8 positive staff, 9 inmate deaths and a combined 325 inmates and staff recovered. This is currently the second highest number of positive inmates at a BOP facility. While this is certainly troubling for the Defendant, the BOP has put in place protocols and restrictions to reduce the risk to the inmate population. Moreover, hope is on the horizon. Vaccines have been approved and an aggressive vaccination campaign is underway. The Court recognizes the Defendant's concerns and is not downplaying the risk the Defendant could face. However, that risk is present even among the general population and is not a basis for relief. *See United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere

7

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Finally, with respect to the § 3553(a) factors, the Court observes that the Defendant has already received a substantial variance in his case. The guidelines range applicable to the Defendant's crimes was 121–151 months. The Court imposed a below guidelines sentence of 93 months – a variance of 28 months. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. As the Government points out in its response, to further reduce the Defendant's sentence would vastly undercut deterrence to others engaged in gun trafficking and would be inconsistent with the sentences imposed in similar cases. Accordingly, the Court concludes that the significant sentence reduction the Defendant seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 68) is DENIED.

So ORDERED on January 6, 2021.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT